KATIE OWEN MORGAN, A/K/A KATIE OWEN, PLAINTIFF v. AT&T CORPORATION, DEFENDANT

No. COA04-435

(Filed 15 February 2005)

**1. Civil Procedure— conversion of 12(b)(6) motion to summary judgment—no abuse of discretion**

There was no abuse of discretion where the trial court converted defendant's 12(b)(6) motion to a motion for summary judgment in an unfair trade practices claim arising from a long-dis-

MORGAN v. AT&T CORP.

[168 N.C. App. 534 (2005)]

tance telephone contract. Defendant's motion raised two issues of fact outside the pleadings pertinent to whether defendant's action was barred by exclusive federal jurisdiction over telephone charges, and both parties were afforded a reasonable opportunity to present all material pertinent to the motion.

**2. Telecommunications— contract in tariffed environment—federal preemption**

The trial court correctly granted summary judgment for defendant on plaintiff's claim for unfair and deceptive practices in the misrepresentation of telecommunication rates. As this agreement was made while the defendant was operating in a federally tariffed environment, plaintiff's state action for fraud and unfair and deceptive practices in misrepresentation of the rates offered by defendant is barred.

**3. Unfair Trade Practices; Fraud— telecommunications agreement—actions after agreement ended—no federal preemption**

Summary judgment for defendant was reversed in an action for fraud and unfair and deceptive practices in a telecommunications agreement as to those actions (continued charges and harassing phone calls) taken after plaintiff's cancellation of the contract and which were independent of the agreement governed by the federal tariff.

Appeal by plaintiff from an order entered 8 August 2003 by Judge Addie Harris Rawls in Harnett County District Court. Heard in the Court of Appeals 17 November 2004.

*Morgan, Reeves & Gilchrist, by Robert B. Morgan, for plaintiff-appellant.*

*Smith Moore, L.L.P., by Jon Berkelhammer and Travis W. Martin, for defendant-appellee.*

HUNTER, Judge.

Katie Owen Morgan ("plaintiff") appeals from an order of dismissal with prejudice dated 8 August 2003 of her action for damages and a declaratory judgment against AT&T Corporation ("defendant"). As we find the trial court's grant of summary judgment improper as to plaintiff's claim under N.C. Gen. Stat. § 75-1.1 (2003) for fraud and

**MORGAN v. AT&T CORP.**

[168 N.C. App. 534 (2005)]

unfair and deceptive practices after the cancellation of the agreement, we reverse in part.

Plaintiff's evidence tends to show that on 27 February 2001, plaintiff was contacted by an agent of defendant via telephone regarding an offer for long-distance service. The agent represented that plaintiff would receive a rate of five cents per minute for long-distance calls for a small monthly fee. Plaintiff accepted the offer and began to use the plan.

Some months later, plaintiff noticed that she had been charged a rate of ten cents per minute for some long-distance calls on her telephone bill. She contacted defendant on 1 June 2001 and was advised the five cent rate applied only to interstate calls on weekends. Plaintiff then asked defendant to cancel her service with them and resumed service with her previous carrier.

Defendant continued to bill plaintiff for services through April 2002. Plaintiff attempted to contact defendant using the printed number on the statements, but was unable to reach a live representative. Plaintiff then wrote a letter to defendant, dated 24 March 2002, advising defendant that she had previously cancelled the service. Plaintiff continued to receive bills from defendant and shortly thereafter was pursued by collection agencies for non-payment of the account. Although she advised the collection agents she had cancelled the account, she continued to receive calls demanding payment.

Plaintiff filed an action on 21 May 2002 for fraud and unfair and deceptive practices against defendant. Plaintiff sought injunctive relief to bar the harassing phone calls and correspondence, and monetary damages. Defendant denied the allegations in the complaint and moved for dismissal under Rule 12(b)(6) for lack of jurisdiction by the trial court. Defendant alleged that its rates were regulated by the Federal Communications Commission, which has exclusive jurisdiction over such tariffs, and that any action challenging communication charges was vested exclusively in the federal courts and the Federal Communications Commission.

Following a period of discovery, a delayed hearing on defendant's motion to dismiss pursuant to Rule 12(b)(6) was held on 14 July 2004. Defendant moved to convert the 12(b)(6) motion to a motion for summary judgment, and for dismissal of the action on the grounds the fixed tariff doctrine was an absolute bar to plaintiff's action. The motion was opposed in writing by plaintiff. The trial court converted defendant's original motion to one for summary

MORGAN v. AT&T CORP.

[168 N.C. App. 534 (2005)]

judgment and granted the motion, dismissing plaintiff's complaint with prejudice on the grounds that plaintiff's exclusive remedy lay in the Federal Communications Act of 1934 ("FCA"). Plaintiff appeals from this order.

We note that plaintiff conceded during oral argument before this Court that she no longer sought injunctive relief against defendant. We therefore make our determination as to whether plaintiff's complaint is preempted solely upon plaintiff's claim for damages for fraud and unfair and deceptive practices.

I.

[1] Plaintiff first contends the trial court erred by converting defendant's Rule 12(b)(6) motion to a motion for summary judgment and dismissing plaintiff's action with prejudice prior to completion of discovery. We disagree.

When matters outside the pleadings are considered in a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2003), that Rule states that the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* "The standard of review of a trial court's decision to convert a Rule 12(b)(6) motion to a Rule 56 motion is abuse of discretion." *Belcher v. Fleetwood Enters., Inc.,* 162 N.C. App. 80, 84, 590 S.E.2d 15, 18 (2004).

Here, defendant raised the affirmative defense of the federal filed tariff rate doctrine, arguing it preempted state action as a matter of law. *See AT&T v. Central Office Telephone,* 524 U.S. 214, 222, 141 L. Ed. 2d 222, 233 (1998). A claim is properly dismissed if the moving party shows that the "opposing party's claim is barred by an affirmative defense which cannot be overcome." *Rahim v. Truck Air of the Carolinas,* 123 N.C. App. 609, 612, 473 S.E.2d 688, 690 (1996). However, the Federal Telecommunications Act of 1996 and subsequent rulemaking by the Federal Communications Commission substantially ended the tariffed environment under which most telecommunications firms operated. *See Ting v. AT&T,* 319 F.3d 1126, 1132 (9th Cir. 2003). As recent cases in other jurisdictions arising post-detariffication have recognized, the filed tariff doctrine applies only to contracts formed while the tariff was in effect, not to those formed after the tariffs were ended. *See Ting,* 319 F.3d at 1139. Thus defendant's motion raised two issues of fact outside the pleadings

pertinent to the determination of whether the filed rate doctrine barred defendant's claim: (1) the date plaintiff and defendant entered into their agreement, and (2) the date on which defendant's rates were detarrifed and the filed rate doctrine no longer applied to its contracts. The trial court requested defendant provide that additional information for the limited purpose of supporting the motion, and affidavits were introduced showing that the agreement between the parties was entered into on 27 February 2001, and that defendant ended operation under a tariffed environment on 31 July 2001. Plaintiff did not contest the above evidence introduced at the hearing on the motion to dismiss. Thus the evidence presented clearly established that defendant was operating in a tariffed environment when the agreement was entered into, and the filed rate doctrine was therefore an affirmative defense which was properly before the trial court. As both parties were afforded a reasonable opportunity to present all material pertinent to the motion, we therefore find no abuse of discretion on the part of the trial court in converting defendant's 12(b)(6) motion to a motion for summary judgment.

## II.

[2] Plaintiff next contends the trial court erred in ruling that the FCA preempted state consumer protection laws and barred plaintiff's action. We agree in part on this question of first impression for our courts, and reverse the grant of summary judgment as to plaintiff's claim for unfair and deceptive practices for the continued harassment after cancellation of the telecommunications service with defendant.

We first note the standard of review on appeal of a motion for summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law, when the evidence presented by the parties is viewed in the light most favorable to the non-movant. *See Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). The dispositive question raised here, as noted *supra* in Section I, is whether plaintiff's claim is preempted as a matter of law by the FCA.

The United States Supreme Court has held that Congress' intent to supercede state law may be inferred in three ways, absent explicit pre-emptive language: (1) when the scheme of federal regulation is so pervasive that an inference is reasonable that Congress left no room for the States to supplement it, (2) when the legislation concerns a field in which the federal interest is so dominant that the federal system is assumed to preclude enforcement of state laws on the same

subject, or (3) when the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose. *See Fidelity Federal S. & L. Assn. v. de la Cuesta*, 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675 (1982). Further, even if express or implied preemption is not found, state law is nullified to the extent that it actually conflicts with federal law. *Id.*

The stated purpose of the FCA is to regulate

interstate and foreign commerce in communication . . . so as to make available, so far as possible, to all the people of the United States, without discrimination on the basis of race, color, religion, national origin, or sex, a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges[.]

47 U.S.C. § 151 (2001). In order to accomplish this purpose, the Federal Communications Commission formerly required telephone companies which were common carriers to file what were known as tariffs, or rate schedules of all charges for interstate services. 47 U.S.C. § 203(a) (2001). To prevent unfair or discriminatory charges, 47 U.S.C. § 203(c) made it unlawful for a carrier to provide services except as specified in the filed tariff. *Id.*

The FCA therefore preempts state actions to enforce even fraudulent agreements of rates which vary from the filed tariff. *See AT&T v. Central Office Telephone*, 524 U.S. at 222, 141 L. Ed. 2d at 233 (holding that "even if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff"). Thus, as the agreement was made while the defendant was operating in a tariffed environment, plaintiff's state action for fraud and unfair and deceptive practices in misrepresentation of the rates offered by defendant is barred and we affirm the trial court's grant of summary judgment as to that portion of the complaint.

**[3]** The FCA does not, however, exclusively preempt state action against purveyors of telecommunications. Section 414 of the FCA states that "[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414 (2001). The United States Supreme Court has held that this savings clause "preserves only those rights that are not inconsistent with the statutory filed-tariff requirements."

*AT&T v. Central Office Telephone*, 524 U.S. at 227, 141 L. Ed. 2d at 236. As such, "[a] claim for services that constitute unlawful preferences or that directly conflict with the tariff . . . cannot be 'saved' under § 414." *Id.* However the Second Circuit has noted that:

> The FCA not only does not manifest a clear Congressional intent to preempt state law actions prohibiting deceptive business practices, false advertisement, or common law fraud, it evidences Congress's intent to allow such claims to proceed under state law. . . . Moreover, while the FCA does provide some causes of action for customers, it provides none for deceptive advertisement and billing. . . .
>
> The states may have an equal or greater interest in preventing such conduct as manifested by state consumer protection laws.

*Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2nd Cir. 1998) (footnote omitted).

In this case, plaintiff's complaint, in addition to alleging fraud in the misrepresentation of the rate, also raised a claim of fraud and unfair and deceptive practices under N.C. Gen. Stat. § 75-1.1 for defendant's continued charges to plaintiff after cancellation of the service, and continuing harassing phone calls to plaintiff. Our courts have established that an unfair and deceptive practices claim must show "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury." *Unifour Constr. Servs., Inc. v. BellSouth Telecomm., Inc.*, 163 N.C. App. 657, 665, 594 S.E.2d 802, 807 (2004). An unfair practice has been recognized as one which " 'offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. [A] party is guilty of an unfair act or practice when it engages in conduct that amounts to an inequitable assertion of its power or position.' " *Unifour Constr. Servs.*, 163 N.C. App. at 665-66, 594 S.E.2d at 807-08.

The statement of "an intention to perform an act, when no such intention exists, constitutes misrepresentation of the promisor's state of mind, an existing fact, and as such may furnish the basis for an action for fraud if the other elements of fraud are present[.]" *Unifour Constr. Servs.*, 163 N.C. App. at 666, 594 S.E.2d at 808. "[P]roof of fraud necessarily constitutes a violation of the statutory prohibition against unfair and deceptive acts[.]" *Id.*

MORGAN v. AT&T CORP.

[168 N.C. App. 534 (2005)]

Here, plaintiff contacted defendant regarding cancellation of the service, but continued to be billed for several months after the cancellation, even after attempting to contact defendant by telephone and in writing regarding the continued charges. Additionally, defendant placed plaintiff's account with a collection agency who continued to call and harass plaintiff, even after notification by plaintiff that the account had been cancelled. These actions, taken after plaintiff's cancellation of the contract and independent of the agreement governed by the filed tariff, present a claim sufficient, when taken in the light most favorable to the plaintiff, to overcome a motion for summary judgment.

Further, although courts have held that awards of damages which would provide compensation for misrepresented rates would violate the filed tariff doctrine by effectively giving claimants a discounted rate for phone service, *see Marcus*, 138 F.3d at 60, *Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1316-17, (11th Cir. 2004), damages for unfair and deceptive practices for the continued harassment by defendant after cancellation of the phone service, such as sought by plaintiff in this case, present no conflict with the statutory filed-tariff requirements and are therefore not preempted by the FCA. *See Marcus*, 138 F.3d at 62. As an award under N.C. Gen. Stat. § 75-16 (2003) provides treble damages for unfair and deceptive practices, not purely compensatory damages, a monetary award under the statute would not provide a discounted rate to plaintiff, but rather would both punish defendant for unethical practices and provide remediation for plaintiff's harassment. *See Marshall v. Miller*, 302 N.C. 539, 546, 276 S.E.2d 397, 402 (1981) (holding that Section 75-16 is both punitive and remedial, serving as a deterrent, encouraging private enforcement, and providing a remedy for aggrieved parties).

As plaintiff's action for fraud and unfair and deceptive practices for defendant's actions subsequent to plaintiff's cancellation of service is not preempted by the Federal Communications Act, we therefore reverse the trial court's grant of summary judgment as to this issue.

In conclusion, we affirm the trial court's grant of summary judgment as to plaintiff's claim for fraud and unfair and deceptive practices as to defendant's misrepresentation of the filed rate, and reverse the trial court's grant of summary judgment as to plaintiff's claim for fraud and unfair and deceptive practices as to defendant's actions after the cancellation of the agreement between the parties.

MARTIN & LOFTIS CLEARING & GRADING, INC. v. SAIEED CONSTR. SYS. CORP.

[168 N.C. App. 542 (2005)]

Affirmed in part and reversed in part.

Judges CALABRIA and LEVINSON concur.